OPINION
{¶ 1} Lynwood Duane Brouwer filed this action in mandamus seeking a writ which compels the Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation and which compels the commission to enter a new order granting the compensation.
 {¶ 2} In accord with Loc.R. 12(M), the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision which includes a recommendation that we deny the requested relief. (Attached as Appendix A.)
 {¶ 3} Counsel for Mr. Brouwer has filed objections to the magistrate's decision. Counsel for the commission has filed a memorandum in response. The case is now before the court for a full, independent review.
 {¶ 4} Mr. Brouwer was only 27 years of age when he was involved in a motorcycle accident which entitled him to workers' compensation benefits. He suffered fractures of both legs, his right arm and several vertebrae. He also suffered injuries to his lower back resulting in lumbar radiculopathy. He eventually received an award of 100 percent permanent partial disability.
 {¶ 5} In May of 2000, Mr. Brouwer filed an application for PTD compensation, supported by a report from his treating physician, Stephen Altic, D.O.
 {¶ 6} Mr. Brouwer was examined by commission specialist Timothy J. Fallon, M.D. Dr. Fallon found a 41 percent whole person impairment, but also reported that Mr. Brouwer was physically capable of sustained remunerative employment. Based upon Dr. Fallon's reports, a psychological report from Donald J. Tosi, Ph.D, and an employability assessment report from Randi J. Owen, a staff hearing officer ("SHO") of the commission issued an order denying PTD compensation for Mr. Brouwer.
 {¶ 7} In this mandamus action, counsel for Mr. Brouwer argues that the SHO's order contains mistakes with respect to Mr. Brouwer's medical restrictions set forth in an occupational activity assessment form completed by Dr. Fallon. Dr. Fallon reported that Mr. Brouwer could move weights of less than ten pounds "0-3 hours." Dr. Fallon also reported that Mr. Brouwer could not climb ladders, could use foot controls with his left lower extremity occasionally and could handle items occasionally with his right upper extremity. Mr. Brouwer is right-handed.
 {¶ 8} The SHO's order mistakenly indicates occasional use of the left upper extremity, as opposed to the left lower extremity. If anything, this misstatement is a favorable restriction from Mr. Brouwer's point of view. None of the jobs which were reported as potential employment for Mr. Brouwer involve extensive use of the lower extremities, so an additional restriction on the use of his left upper extremity was helpful. More likely, however, the SHO accurately considered Dr. Fallon's restriction and mistakenly stated "upper" for "lower."
 {¶ 9} A second mistake is contained in the SHO's order with respect to Dr. Fallon's restrictions. Dr. Fallon reported that Mr. Brouwer could climb ladders "not at all." The SHO's order indicates that Mr. Brouwer could climb "occasionally." As noted by the magistrate, no employment involving climbing ladders or stairs is considered for Mr. Brouwer, so this mistake played no significant role in the denial of PTD compensation.
 {¶ 10} The mistakes with respect to Dr. Fallon's restrictions do not merit relief.
 {¶ 11} The second argument on behalf of Mr. Brouwer attacks the SHO's consideration of the vocational report from Ms. Owen. Ms. Owen viewed Mr. Brouwer's work history as an asset. She reported:
 {¶ 12} "The claimant worked various and diverse jobs and demonstrated the ability to meet basic demands of entry level jobs."
 {¶ 13} This observation and conclusion does not in fact conflict with a report from the J. Leonard Camera Rehabilitation Center which noted as an asset for Mr. Brouwer "ability to work at an assembly task requiring repetitive bilateral physical manipulation using the upper extremities."
 {¶ 14} Ms. Owen's report was not so defective as to bar it from consideration.
 {¶ 15} The objections to the magistrate's decision are overruled. We adopt the findings of fact and conclusions of law contained in the magistrate's decision and deny the requested relief.
Objections overruled; writ denied.
DESHLER and BOWMAN, JJ., concur.
 IN MANDAMUS {¶ 16} Relator, Lynwood Duane Brouwer, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation and ordering the commission to find that relator is entitled to that compensation pursuant to State ex rel. Gay v. Mihm (1994) 68 Ohio St.3d 315.
Findings of Fact:
 {¶ 17} 1. Relator sustained a work-related injury on August 14, 1989, and his claim has been allowed for: "Fracture both legs; fracture right arm; fracture vertebrae; lumbar radiculopathy; herniated disc (L4-5); compression fracture of L3, L4 and L5; pars interarticularis fracture C6-C7; compression fracture of T6-7; lumbar degenerative disc disease." The injury occurred while relator was driving his motorcycle to a job site and was struck by a car. Relator never returned to work after the accident.
 {¶ 18} 2. Relator initially received temporary total disability compensation. After he reached maximum medical improvement, the temporary total disability compensation was terminated and the Ohio Bureau of Workers' Compensation ("bureau") eventually issued an order awarding a 100 percent permanent partial disability award.
 {¶ 19} 3. On May 3, 2000, relator filed an application for PTD compensation. Relator's application was supported by the April 17, 2000 report of his treating physician, Dr. Stephen Altic. In his April 17, 2000 report, Dr. Altic concluded as follows:
 {¶ 20} "I note that this gentleman did not complete high school and has education up to the tenth grade and is literate but has always worked doing manual labor. Clearly because of these injuries I feel that he is unable to perform any manual labor and never will again be able to do so. It is my opinion that because of these injuries and the disabilities as a result of them that this gentleman is permanently and totally disabled and will not ever be able to return to his former position of employment or to any sort of any physical labor. Based upon his vocational abilities and his vocational history and educational background coupled with his impairments as a result of this industrial injury I feel that this patient will never be able to participate in any gainful employment in any employable activity whatsoever. It is my opinion he is permanently and totally disabled from any sort of employment."
 {¶ 21} 4. Relator was examined by commission specialist, Dr. Timothy J. Fallon, who issued a report dated July 12, 2000. Dr. Fallon opined that relator had a 41 percent whole person impairment. Dr. Fallon completed an occupational activity assessment wherein he indicated that relator could sit, stand and walk, each for zero to three hours per day; could lift, carry, push, pull or otherwise move up to ten pounds for zero to three hours a day; could occasionally climb stairs, use foot controls, crouch, stoop, bend and kneel, handle objects, and reach at waist and knee level; but was precluded from climbing ladders, reaching overhead and at floor level.
 {¶ 22} 5. Relator was referred to Dr. Donald J. Tosi for a psychological evaluation. With regards to rehabilitation, Dr. Tosi concluded as follows:
 {¶ 23} "It would be advisable for the rehabilitation specialist to approach this claimant in a relatively straight forward way, expose him to vocational options and possibilities and encourage constructive attempts on his part to explore and achieve rehabilitation goals. The claimant's tendencies to procrastinate may easily frustrate the rehabilitation specialist."
 {¶ 24} 6. An employability assessment report was prepared by Randi J. Owen, MA, Med, LPC, CRC, CCM, who issued a report dated August 29, 2000. Based upon the medical report of Dr. Fallon, Ms. Owen concluded that relator could perform the following jobs: "Addresser * * * Sorter * * * Surveillance-System Monitor * * * Stuffer * * * Preparer * * *Referral-And-Information Clerk * * * Compiler." Ms. Owen noted that relator's age of 38 categorized him as a younger person and would not affect his ability to meet the demands of entry-level jobs. Ms. Owen noted that relator had completed a tenth grade education and that he did not complete his GED. However, she concluded that, based upon his past ability to obtain and maintain employment, his limited formal education would not appear to be a factor affecting his ability to meet the demands of entry-level jobs. Further, Ms. Owen noted that relator's ability to work various and diverse jobs demonstrated that he has the ability to meet the basic demands of entry-level jobs.
 {¶ 25} 7. Relator's application for PTD compensation was heard before a staff hearing officer ("SHO") on October 25, 2000, and resulted in an order denying his application. The commission relied upon the medical reports of Dr. Fallon as well as the vocational report evidence of Dr. Tosi and Ms. Owen. The commission also provided its own analysis of the nonmedical disability factors and stated as follows:
 {¶ 26} "* * * The residual functional capacities as set forth in the above persuasive medical reports clearly would not physically prevent the claimant from engaging in sustained remunerative employment consistent with the job titles identified by the Vocational Expert as being current employment options.
 {¶ 27} "The claimant indicated at hearing that he is currently approximately 39 years of age. The Staff Hearing Officer finds that the claimant's age is overall viewed as a positive vocational asset as he is of younger age and still has the potential for vocational retraining. The claimant was 27 years old when he last worked on 08/14/1989. The claimant's age in and of itself clearly would not prevent the claimant from obtaining and performing sustained remunerative employment consistent with the jobs identified by the Vocational Expert as being current employment options.
 {¶ 28} "The claimant indicated at hearing that he has completed approximately the tenth grade level of education. The Staff Hearing Officer finds that the claimant's level of education is overall viewed as a positive vocational factor. According to the claimant, he is able to read, to write, and to perform basic math. The claimant's educational level, in combination with his ability to read, write, and to perform basic math, would assist the claimant in obtaining and performing the entry-level, unskilled types of employment identified by the Vocational Expert as being current employment options.
 {¶ 29} "The claimant's prior work history was identified as including the following: drywall hanger; driver; concrete form setter; ditch digger; laborer; pizza deliverer; gas station attendant; and sweeper salesman. The Vocational Expert notes that the claimant's prior work history is varied and diverse; these ranged from skilled to unskilled positions. The claimant's prior work history is overall viewed as being a positive vocational asset as these varied positions demonstrate the claimant's ability to meet basic demands of entry level jobs and his aptitude to learn new skills.
 {¶ 30} "Pursuant to Speelman v. I.C. (1992), 73 O.App.3d 757, B.F. Goodrich v. I.C. (1995), 73 O.St.3d 525 and Bowling v. National Can Corp. (1996), 77 O.St.3d 148, it is found that a claimant has a responsibility to undergo appropriate and reasonable medical and/or vocational rehabilitation which will either enable a claimant to increase their residual functional capacity, and/or obtain new marketable employment skills, and thereby increase their potential for reemployment. This claimant has had ample time to participate in medical and vocational rehabilitation programming over the years and has not made an effort to re-contact the rehabilitation despite the numerous recommendations of the claimant's former physician (Dr. Miller), Dr. Tosi, and rehabilitation evaluators. It is not unreasonable to expect a claimant to participate in return-to-work efforts to the best of his or her abilities, or to take the initiative to improve reemployment potential. While extenuating circumstances can excuse a claimant's participation in re-education or retraining efforts, claimants should no longer assume that a participatory role, of lack thereof will go unscrutinized. State ex rel. Wilson v. I.C. (1997), 80 O.St.3d 250.
 {¶ 31} "Based on a careful consideration of the above, as well as all of the evidence in file and at hearing, the Staff Hearing Officer concludes that the claimant is capable of performing sustained remunerative employment consistent with the job titles identified by the Vocational Expert as being current employment options. Therefore the claimant is not permanently totally disabled."
 {¶ 32} 8. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 33} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 34} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. Gay, supra. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 35} Relator challenges the commission's order in the following respects: (1) the commission did not accurately list some of the restrictions which Dr. Fallon placed on relator; (2) the commission's treatment of relator's work history is insufficient under Noll; (3) the reports of Dr. Tosi and Ms. Owen do not constitute some evidence upon which the commission could rely; and (4) there is no evidence supporting the commission's finding that relator has failed to pursue rehabilitation. For the reasons that follow, this magistrate finds that relator's arguments are not well-taken.
 {¶ 36} In his first argument, relator correctly points out that the commission did inaccurately reflect in three respects. The commission stated that Dr. Fallon restricted relator to the occasional use of his left upper extremity. In reality, Dr. Fallon noted that relator was restricted from performing repetitive activities with his right upper extremity, as the commission did properly note, as well as his left lower extremity. As such, the commission inaccurately noted that relator had some restrictions with his left upper extremity when he did not. Inasmuch as the commission did properly note relator's right upper extremity and left lower extremity restrictions, as well as that relator was restricted to occasional crouching, stooping, bending and kneeling, as well as occasionally reaching at waist and knee level, this magistrate concludes that this minor misstatement does not amount to an incorrect consideration of the medical restrictions.
 {¶ 37} Relator also contends that the commission did not accurately reflect that Dr. Fallon restricted relator to lifting, carrying, pushing, or pulling up to ten pounds for zero to three hours. In its order, the commission noted Dr. Fallon's restrictions as follows:
 {¶ 38} "* * * He would be restricted from performing repetitive activities with his right upper extremity per Dr. Fallon's 07/12/2000 report. The claimant is physically capable of: sitting up to 3 hours; standing and walking up to 3 hours each; lifting/carrying up to 10 lbs.; pushing/pulling up to 10 lbs.; occasional climbing stairs/ladders; occasional use of left upper extremity; occasional crouching/stooping/bending/kneeling; and occasional reaching at waist or knee level per Dr. Fallon's 07/11/2000 physical capacity evaluation. * * *"
 {¶ 39} Relator objects to the fact that the commission did not specifically use the word "occasional" when discussing his ability to lift, carry, push, pull or otherwise move up to ten pounds. In this instance, the commission did note the appropriate weight limit but did not specifically use the word "occasional." As before, this magistrate concludes that this minor misstatement of Dr. Fallon's restrictions does not compromise the commission's order. By finding that relator could perform sedentary work, by definition, includes the ability to lift, carry, push, pull or otherwise move up to ten pounds occasionally. See Ohio Adm. Code 4121-3-34(A)(2)(a).
 {¶ 40} Lastly, the commission noted that relator could occasionally climb ladders while Dr. Fallon had indicated that he was precluded from climbing ladders. Again, this minor misstatement does not affect the commission's order. The commission specifically found that relator could perform certain work activities within the restrictions of Dr. Fallon. As such, it was concluded that there was some sedentary work activity which relator could perform. The commission adopted the vocational report of Ms. Owen and concluded that relator could perform the jobs which she identified. None of those jobs would require that relator be able to climb ladders. As such, this minor misstatement is immaterial.
 {¶ 41} Overall, this magistrate concludes that these minor misstatements do not adversely affect the commission's order and are not grounds for the issuing of a writ of mandamus.
 {¶ 42} Relator next contends that the commission's analysis of his prior work history is insufficient under Noll. The commission relied upon the vocational report of Ms. Owen to conclude that relator had a varied and diverse work history. Specifically, the commission noted that relator had worked both skilled and unskilled jobs in the past including work as a drywall hanger, driver, concrete form setter, ditch digger, laborer, pizza deliverer, gas station attendant, and sweeper salesman. The commission concluded that relator's work history was overall viewed as being positive because it demonstrated his ability to meet basic demands of entry-level jobs and his aptitude to learn new skills. This does not constitute an abuse of discretion.
 {¶ 43} Part of relator's argument focuses on his assertion that the commission must identify transferable skills. However, the commission is not required to identify transferable skills when the commission makes the conclusion that relator is capable of meeting the demands of basic entry-level unskilled jobs. In the present case, the jobs which the commission identified as being available for relator do not require transferable skills. As such, the commission did not abuse its discretion by not identifying those skills.
 {¶ 44} Relator also contends that the vocational evidence upon which the commission relied does not constitute some evidence. First, relator contends that Ms. Owen's employability assessment is flawed because she did not have the rehabilitation report form the J. Leonard Camera Rehabilitation Center and because she made certain assumptions based on relator's prior work history. For the reasons that follow, this magistrate disagrees.
 {¶ 45} Relator points out that Ms. Owen did not administer any test to him while, on the other hand, certain tests had been administered by the J. Leonard Camera Rehabilitation Center. Based upon relator's job history, Ms. Owen concluded that he had certain aptitudes in the categories of motor coordination, finger dexterity, manual dexterity and hand/eye/foot coordination. However, the testing conducted by the J. Leonard Camera Rehabilitation Center indicated that relator actually scored below average in those areas.
 {¶ 46} This magistrate notes that its was not improper for Ms. Owen to reach the conclusion she reached based upon relator's past work history. Her findings, in and of themselves, do not remove her report from proper consideration by the commission. Rather, the fact that she based her findings on relator's prior work history instead of on the results of tests which were administered, goes to the weight and credibility of the evidence and is for the commission to determine. In the present case, the commission chose to rely on Ms. Owen's vocational report and the jobs which she identified that relator could perform. Inasmuch as her report is not defective because she did not actually administer certain tests to relator, this argument of relator fails.
 {¶ 47} Relator also contends that the commission relied on conflicting vocational evidence. Again, this magistrate disagrees. Although relator was eventually not referred to anymore rehabilitation with the bureau, the reasons for that were due to relator's continued pain complaints and the fact that relator himself indicated that he was not ready for employment or vocational exploration. When reviewing the 1996 vocational evalua-tion performance at the J. Leonard Camera Rehabilitation Center, this magistrate notes that relator was seen as a good candidate for rehabilitation and reemployment and several jobs were identified as being within his abilities. Dr. Tosi also saw relator as a good candidate for rehabilitation. As such, even though relator was eventually terminated from the rehabilitation program, there were a variety of reasons which do not render the vocational evidence in front of the commission contradictory.
 {¶ 48} Lastly, relator contends that there is no evidence in the record to indicate that he failed to pursue rehabilitation. Instead, relator points out that he went to the J. Leonard Camera Rehabilitation Center and that he participated in work hardening and other vocational programs designed to get him reemployed. Relator contends that all of his efforts were unsuccessful. Instead, the commission looked at the fact that relator's rehabilitation file was closed in March 1997 prior to the receipt of Dr. Tosi's April 3, 1997 report and that relator has not contacted the rehabilitation department since then to explore vocational training or other employment options, nor does relator indicate any interest in participating in rehabilitation services in the future. The commission noted the recommendations of relator's former position, Dr. Miller, as well as Dr. Tosi and other rehabilitation evaluators who felt that relator could benefit from rehabilitation. The commission noted that relator had not made any efforts since 1997.
 {¶ 49} Relator contends that he cannot be held accountable for failing to pursue rehabilitation efforts after 1997 when he was terminated from the J. Leonard Camera Rehabilitation Center. However, part of the reason that relator was terminated was that he himself indicated that he was not willing to pursue any further rehabilitation or vocational training. Granted, relator was still having difficulty dealing with the amount of pain he had; however, the commission was within its discretion to look at the fact that relator expressly indicated that he was no longer interested in pursuing rehabilitation when considering this issue. As stated in State ex rel. Speelman v. Indus. Comm. (1992),73 Ohio App.3d 757, and State ex rel. Bowling v. Natl. Can Corp. (1996),77 Ohio St.3d 148, the commission and courts can demand accountability of a claimant who, despite time and medical ability to do so, does not further their education or learn new skills. The commission can hold a claimant accountable for their failure to take advantage of opportunities for rehabilitation and retraining. In the present case, the commission concluded that relator could have taken greater advantage of rehabilitation and vocational services. That finding is supported by some evidence in the record which indicates that, despite his continued difficulties with pain management, relator could benefit from vocational training if he was so motivated.
 {¶ 50} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation and this court should deny his request for a writ of mandamus.